[No. 2117]

## IN THE MATTER OF THE APPLICATION OF FRANK BENITES FOR A WRIT OF HABEAS CORPUS.

[140 Pac. 436]

1. CRIME AGAINST NATURE—SODOMY—OFFENSES—INDICTMENT.
    Rev. Laws, sec. 6459, punishing the "infamous crime against nature" either with man or beast, includes all unnatural acts in whatever form or by whatever means they are perpetrated, and an indictment charging that accused did unlawfully commit "the infamous crime against nature" with a man, stating the manner of the act, was sufficient.

2. CRIME AGAINST NATURE—SODOMY—STATUTES—CONSTRUCTION.
    Rev. Laws, sec. 6459, punishing the infamous crime against nature, must be construed according to the fair import of its terms, so that its objects may be effective.

ORIGINAL PROCEEDING. In the matter of the application of Frank Benites for a writ of *habeas corpus*. **Writ dismissed.**

*Thomas E. Kepner,* for Petitioner.

*Geo. B. Thatcher,* Attorney-General, *E. T. Patrick,* Deputy Attorney-General, *and William Woodburn, Jr.,* District Attorney, for Respondent.

By the Court, McCARRAN, J.:

This is an original proceeding in *habeas corpus*. The

petitioner, Frank Benites, as is related in the petition, is now held by A. A. Burke, sheriff of Washoe County, by reason of an information filed against petitioner by the district attorney of Washoe County, which information is as follows: "William Woodburn, Jr., district attorney in and for the county of Washoe, in the name and by the authority of the State of Nevada, informs the above-entitled court that Frank Benites, the defendant above named, has committed a felony, to wit, the infamous crime against nature, in the following manner: That said defendant, on the 3d day of March, A. D. 1914, or thereabouts, and before the filing of this information, at and within the county of Washoe, State of Nevada, did then and there wilfully, unlawfully, and feloniously commit the infamous crime against nature with and upon one, * * * a male human being, then and there being, by then and there inserting and placing his penis in the mouth of the said. * * * All of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Nevada."

It is the contention of counsel for petitioner that the information in this case fails to state facts sufficient to constitute a public offense under the statutes of Nevada. The statute applicable to this offense, and the only statute in this state that has any bearing upon this offense, is as follows: "The infamous crime against nature, either with man or beast, shall subject the offender to be punished by imprisonment in the state prison for a term not less than five years, and which may extend to life." (Section 6459, Revised Laws.)

It is the contention of petitioner that the infamous crime against nature is synonymous with sodomy as that crime was known and construed under the common law. In our judgment it is scarcely necessary to determine whether or not the term "infamous crime against nature" is of similar import or significance to the crime which, under the common law, was designated sodomy. In 1 Hawkins's Pleas of the Crown, p. 357, speaking of the

crime of sodomy, it is stated: "All unnatural carnal copulation, whether with man or beast, seems to come under the notion of sodomy, which was felony by the ancient common law, and punished according to some authors with burning, according to others with burning alive."

It must be observed in this respect that, even in the time in which this authority wrote, all unnatural carnal copulations were embraced within the term and generally understood to be sodomy.

[1] It is unnecessary in our judgment to determine whether or not our legislature, in enacting the section above quoted, had in mind the common-law crime of sodomy. It is sufficient, we believe, to say that the infamous crime against nature as mentioned by our statute should be no less in its scope that that which was understood to be within the crime of sodomy as designated by Hawkins in his Pleas of the Crown, wherein he states, "All unnatural carnal copulation seems to come under the notion of sodomy."

If our statute specifically mentioned or designated the crime sought to be reached as sodomy, perhaps we would be bound by the understanding of the crime as described by that word, or as that crime was construed in the earlier decisions. It must be observed, however, that the statute did not limit or define the crime which it sought to punish by designating it as sodomy, but rather sought to cover the entire field of unnatural acts of carnal copulation. In other words, it is our judgment that section 6459 of our Revised Laws seeks to define and punish acts of unnatural copulation in whatsoever form those acts may be perpetrated, and without regard to the means or manner of perpetration.

Nature has provided in the male and female the organs for the reproduction of the species. Any copulation by male with male, or by male with female, other than that copulation by and through the organs provided by nature for the reproduction of the species, is an act against the order of nature, and hence must of necessity be a crime

against nature, inasmuch as it is an act against nature's law.

[2] Counsel for petitioner refers to many decisions setting forth a view contrary to our reasoning in this particular. It is true that writers upon the common law, and common-law courts generally, hold that, to constitute sodomy, the act must be in that part where sodomy is usually committed; and were we limited by the words of our statute to the crime of sodomy, as it was generally understood in the common-law courts, it is doubtful as to whether or not we could construe it as embracing any other acts than those contemplated by the common-law authorities. But our statute must be construed according to the fair import of its terms, and to the end that its objects may be effected, and, with this in view, it is our judgment that it is not unreasonable to assume that all unnatural acts of carnal copulation between man with man or man with woman, where a penetration is effected into any opening of the body other than those provided by nature for the reproduction of the species, are sufficiently contemplated and embraced within the term the "infamous crime against nature" as set forth by our statute.

The method by which the act is alleged to have been performed, as set forth in the information in this case, is as much an act against nature and against the laws of nature as was the act generally conceded to be sodomy by the common-law writers and common-law courts.

. As was said in the case of *Honselman* v. *People*, 168 Ill. 175, 48 N. E. 304: "It is as much against nature, in the sense of being unnatural and against the order of nature, as sodomy or any bestial or unnatural copulation that can be conceived."

The Supreme Court of South Dakota, in the case of *State* v. *Whitmarsh*, 26 S. D. 426, 128 N. W. 580, in construing a statute somewhat similar to that of ours, said: "It would be an insult to the legislature which enacted our statute to hold that from the words of our statute it appears it intended to allow the most heinous form of the

crime against nature to go unpunished simply because it was an unusual form of such crime."

In the case of *Herring* v. *State,* 119 Ga. 709, 46 S. E. 816, the Supreme Court said: "After much reflection we are satisfied that, if the baser form of the abominable and disgusting crime against nature, *i. e.,* by the mouth, had prevailed in the days of the early common law, the courts of England could well have held that that form of the offense was included in the current definition of the crime of sodomy. And no satisfactory reason occurs to us why the lesser form of this crime against nature should be covered by our statute, and the greater excluded, when both are committed in like unnatural manner, and when either might well be spoken of and understood as being 'the abominable crime not fit to be named among Christians.' "

Without commenting upon the authorities relied upon by counsel for petitioner, we rather concur in the reasoning and rule as set forth in the case of *State* v. *Whitmarsh, supra,* and as asserted by the Supreme Court of the State of Oregon in the case of *State* v. *Start,* 65 Or. 178, 132 Pac. 512, 46 L. R. A. n. s. 266.

In our judgment the information sufficiently charges a crime under the statute wherein the crime against nature is made a felony. It follows that the writ should not be perpetuated, but should be dismissed.

It is so ordered.